UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

       -v.-　　　　　　　　　　　　　　　　　　　ORDER

JOSEPH DATELLO,　　　　　　　　　　　　　　　17-CR-89-12 (CS)

           Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Joseph Datello's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (Doc. 1071); the Government's opposition thereto, (Doc. 1101); and Defendant's reply, (Doc. 1102).[1]

      On January 4, 2019, Defendant was sentenced principally to 168 months' imprisonment on his conviction for racketeering conspiracy. (Doc. 577.)[2] He has served almost 39 of those 168 months.

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community. Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the

---

[1] When able to do so, defense counsel is directed to send to chambers for filing under seal unredacted hard copies of Defendant's motion and any exhibits that are not publicly filed.

[2] This sentence was at the low end of Defendant's Sentencing Guidelines range of 168-210 months. (Doc. 557 ("PSR") at 26.)

defendant has a terminal medical condition or because of serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above.

Defendant argues that he suffers from health conditions – including dementia, incontinence, macular degeneration and hearing impairment – that fit the first category, and that his age (69), obesity (body mass index of 34%) and mental condition put him at increased risk for severe disease should he contract COVID-19, which fits the fourth category.

Taking the second argument first, the Government concedes that Defendant's age and obesity are risk factors, but notes that through the efforts of the Bureau of Prisons ("BOP"), there are and have been no COVID-19 cases among inmates at FCI Hazelton, where Defendant is housed. The Government further argues that even if Defendant's health, combined with the pandemic, amounts to an extraordinary and compelling reason, it is outweighed by the § 3553(a) factors. I agree. Defendant is a longtime soldier in the Lucchese Crime Family. He swore an oath of loyalty to that murderous organization. He himself made efforts to murder an individual who betrayed him and the Family; conspired to deal large quantities of cocaine and heroin; and engaged in extortionate debt collection. The instant offense was his sixth felony conviction and his fourth federal conviction. Prior significant sentences have not deterred him. Releasing defendant because of the pandemic, after he has served less than one quarter of his sentence, would undermine several of the purposes of sentencing. It would not be just punishment and would introduce unwarranted sentencing disparities. It would not give sufficient weight to

Defendant's criminal history or his disrespect for the law. It would fail to protect the public from further crimes by Defendant. Given his track record and sworn loyalty to the Mafia, there is – apart from his mental condition, to be discussed below – every reason to believe he would return to crime, as he has so often in the past. Accordingly, the motion is denied to the extent it is based on COVID-19 and Defendant's risk factors.

The possible dementia, as the Government recognizes, presents a closer question. Under Application Note 1 to U.S.S.G. § 1B1.13, extraordinary and compelling circumstances exist if "[t]he defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

The medical record, noting confusion and incontinence, suggests that Defendant has developed a serious cognitive impairment over the last few months. His treating general practitioner and prison social workers believe it is dementia. Defendant saw a neurologist on July 27, 2020, however, who said testing – specifically, an MRI and formal neuropsychological testing – is necessary to determine if the condition is dementia or perhaps some other condition, such as hydrocephaly, from which Defendant could recover. Further, many of Defendant's symptoms could be feigned. The Court agrees with defense counsel that it would be an elaborate hoax if it were a hoax, but Defendant's lifetime of anti-social behavior makes such a hoax conceivable. Even if Defendant is not feigning his symptoms, if they are caused by a condition that can be treated, he may be able to recover. On July 8, 2020, "possible

dehydration/electrolyte imbalance" was suspected as a reason for Defendant's general health decline over recent months.  (Doc. 1102 Ex. A.)  His symptoms are consistent with numerous conditions, (*id.* at 3 n.2), some of which may be treatable.

Accordingly, I agree with the Government that release based on Defendant's health conditions, including possible dementia, is premature.  Should he not have a cognitive impairment, or should it be one from which he could recover, the § 3553(a) factors and the danger to the community from continued criminal activity on Defendant's part would outweigh the health conditions.  Should there be a genuine cognitive impairment from which Defendant is not likely to recover, I would then have to determine whether continued incarceration – perhaps at a facility that can provide a higher level of medical care – or sentence reduction would be the appropriate outcome.  But at this time I need more information.  The Government is directed to ensure that BOP arranges for the MRI and neuropsychological testing as soon as practicable.  In the meantime, Defendant is in a safe place and is getting regular medical attention, and the motion is denied without prejudice to renewal.

Dated: August 4, 2020
       White Plains, New York

                                         *Cathy Seibel*
                                    CATHY SEIBEL, U.S.D.J.